IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**MARK E. SALYER,**

       **Petitioner,**

v.                                                                                          **Case No. 5:19-cv-00875**

**WARDEN D. L. YOUNG,**

       **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On December 5, 2019, Petitioner, Mark E. Salyer ("Salyer"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking an order compelling the Federal Bureau of Prisons ("BOP") to transfer Salyer to home confinement. (ECF No. 1). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's requests for dismissal, (ECF Nos. 9, 12); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1); and **REMOVE** this matter from the docket of the Court.

**I.**     **Relevant History**

On April 30, 2012, after Salyer had pleaded guilty to one count of wire fraud and one count of money laundering, the United States District Court for the Eastern District of Tennessee ("Sentencing Court") sentenced him to 108 months' imprisonment,

1

followed by three years of supervised release. *See United States v. Salyer,* Case No. 2:11-cr-00004-JRG-DHI (E.D. Tenn. Apr. 30, 2012), at ECF No. 55. On December 5, 2019, while he was an inmate at the Satellite Prison Camp located at Federal Correctional Institution Beckley, West Virginia, Salyer filed the instant petition for habeas relief under 28 U.S.C. § 2241. (ECF No. 1). Salyer claimed that he became eligible for release to home confinement in July 2019 pursuant to the BOP's policy statements, the policies of the United States Sentencing Commission, and the directives of the First Step Act. Nonetheless, the BOP had failed to properly consider Salyer's case, resulting in an unconstitutional delay of his release to home confinement. (*Id*). Salyer requested that the Court compel the BOP to exercise its discretion and immediately transfer him to home confinement.

On December 16, 2019, after Salyer had paid his filing fee, the Court ordered Respondent to show cause why the relief requested should not be granted. (ECF No. 5). On January 24, 2020, Salyer filed a memorandum, asking the Court to amend his request for relief. (ECF No. 8). Salyer explained that his release date from the prison camp was January 31, 2020, rendering moot his pending request for transfer to home confinement. Accordingly, Salyer asked that the Court instead grant him an 18-month reduction of his term of supervised release "commensurate with the amount of time Mr. Salyer was eligible for Home Confinement under the FIRST STEP Act." (*Id*. at 1).

On February 5, 2020, Respondent filed a response to the Show Cause Order, arguing that Salyer's petition for habeas relief was moot given his release from custody on January 31, 2020. (ECF No. 9). Respondent did not address Salyer's amended request for relief; accordingly, on June 3, 2020, the Court ordered Respondent to do so. (ECF No. 11). Respondent filed a memorandum on July 10, 2020, asserting that this Court

lacked jurisdiction to modify Salyer's term of supervised release, as only the Sentencing Court retained that authority. (ECF No. 12). In addition, Respondent argued that the BOP had properly considered Salyer for release to a residential reentry center or to home confinement, but due to a series of clerical errors and a lack of available space at residential reentry centers, Salyer was released from custody before the BOP could finish the placement process. (*Id.*).

## II. Standards of Review

Although Respondent does not state under which rules he brings the requests for dismissal, given the stage of the proceedings and nature of the arguments presented, they are best understood as motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(c). Because Respondent filed a Response concurrently with his first request for dismissal, the motion should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice

3

or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion, without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

As to the request for dismissal contained in Respondent's second response, a motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with

the petitioner, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness generally deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*, No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases). Here, Respondent is bringing a factual challenge to this Court's jurisdiction over Petitioner's petition, alleging that subsequent developments have removed the factual basis for jurisdiction. As such, this Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See L.K. ex rel. Henderson v. N. Carolina State Bd. of Educ.*, No. 5:08-CV-85-BR, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011), *report and recommendation adopted*, No. 5:08-CV-00085-BR, 2011 WL 861154 (E.D.N.C. Mar. 9, 2011).

**III.   Discussion**

As stated, Salyer was released from prison prior to this Court's review of his habeas petition. As a prerequisite to addressing the merits of Salyer's petition, this Court must have subject matter jurisdiction over the dispute pursuant to Article III of the United States Constitution. Even when no party has raised the issue of subject matter jurisdiction, the Court must consider it. Article III allows federal courts to adjudicate "only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). Consequently, "[t]o be justiciable under Article III of

5

the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983); *also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence."). In other words, a case no longer presents a actionable controversy—and thus becomes moot—when it is "impossible for [the] court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

The federal habeas corpus statute requires an individual to be "in custody" at the time he brings a petition for a writ of habeas corpus. *Leonard v. Hammond,* 804 F.2d 838, 842 (4th Cir. 1986). Without that condition precedent, the court lacks subject matter jurisdiction over the habeas proceeding. Although the individual's subsequent release will not deprive the court of jurisdiction, "[t]he question of mootness is separate and distinct" from the "in custody" requirement. *Id.* Generally, the transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir.2007). As such, when a federal prisoner files a habeas corpus petition seeking an earlier release from incarceration, his supervening release may render the petition moot, because there is no longer a justiciable controversy.

There are two exceptions to the mootness doctrine. *Leonard,* 804 F.2d at 842. First, under the "collateral consequences" exception, a habeas petition is not rendered

moot when a petitioner is released from custody where the petition challenges collateral consequences, which continue after expiration of the sentence and are sufficient to create "a substantial stake" in the outcome of the habeas petition that "survives the satisfaction of the sentence." *Leonard,* 804 F.2d at 842. Second, the "capable of repetition, yet evading review" exception prevents a petition from becoming moot when two elements are present: (a) the challenged action is too short in duration to be fully litigated before it ceases or expires, and (b) there is a reasonable expectation that the same petitioner will be subjected to the same wrongful action again. *Id* (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)).

### A. Exception to Mootness—Collateral consequences

Salyer implicitly raises the issue of collateral consequences when he seeks a reduction of his term of supervised release to account for the days he spent in prison when he allegedly should have been released to home confinement. Collateral consequences are presumed when a petitioner is attacking a conviction or sentence while the petitioner is still serving the sentence imposed for that conviction. *See United States v. Jackson,* 523 F.3d 234, 242 (3rd Cir. 2008). To demonstrate collateral consequences after the sentence has been served, the petitioner must show "some concrete and continuing injury other than the now-ended incarceration." *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018).

In *Ketter*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") considered whether a term of supervised release constituted a collateral consequence sufficient to prevent a sentence challenge from becoming moot upon the petitioner's release from incarceration. Defendant Ketter contested his sentence on appeal as procedurally and substantively unreasonable, but was released from prison

prior to appellate court review. *Id.* Respondent argued that, because Ketter was no longer incarcerated, his claim was moot, notwithstanding that he continued to serve a term of supervised release. *Id.* at 65.

The Fourth Circuit rejected Respondent's argument, finding that a sentence, consisting of a term of incarceration followed by a term of supervised release, was a "unitary" sentence, and "a challenge to that sentence presents a live controversy, even though [the defendant] has served the custodial portion of that sentence." *Id.* The Fourth Circuit concluded that "[b]ecause of the reciprocal relationship between prison sentence and a term of supervised release, even when the prison term has ceased, a defendant serving a term of supervised release has a 'legally cognizable interest in the outcome' of a challenge to his sentence." *Id.* at 65-66. (citation omitted). The Fourth Circuit further explained that "[a]lthough the underlying prison sentence has been served, a case is not moot when an associated term of supervised release is ongoing, because on remand a district court *could* grant relief to the prevailing party in the form of a shorter period of supervised release." *Id.* at 66.

The record indicates that Salyer is serving a term of supervised release. However, as explained below, a term of supervised release is insufficient to sustain Salyer's habeas petition herein, because of the nature of the claim raised and the Court's lack of jurisdiction to award Salyer any tangible relief, even should he succeed on the merits of his habeas petition. "The question is not whether the petition ... asserts a collateral consequence, but whether it asserts a *redressable* collateral consequence." *Rhodes v. Judiscak,* 676 F.3d 931, 933 (10th Cir. 2012). Salyer's petition simply does not raise a collateral consequence that is redressable by this Court. Salyer does not contest the validity of his conviction or sentence; rather, he brings his petition to challenge the BOP's

8

alleged delay in placing him on home confinement. The only relief this Court could grant would be to order the BOP to release Salyer to a residential reentry center or home confinement. At this point, such relief would be of no benefit to Salyer. Indeed, it would be a detriment.

The Supreme Court of the United States ("Supreme Court") considered a similar claim in *United States v. Johnson*, 529 U.S. 53 (2000). In that case, a defendant had been serving a custodial sentence in federal prison when two of his convictions were declared invalid, resulting in his immediate release from custody. *Id.* at 54. At the time of his release, the defendant had served more time in prison than he should have absent the invalid convictions. The defendant argued in the Supreme Court that the overserved time should be credited against his still valid term of supervised release, reducing its length. *Id.* Looking to the text of the statute governing supervised release, 18 U.S.C. § 3624(e), the Supreme Court ruled against the defendant, holding that his term of supervised release should remain unaltered. *Id.*

In reaching this determination, the *Johnson* Court found that the text of § 3624(e) makes clear "that a supervised release term does not commence until an individual 'is released from imprisonment.'" *Id.* at 57. The Supreme Court noted that "[a]ll concede [the defendant's] term of imprisonment should have ended earlier than it did," but concluded, "[i]t does not follow, however, that the term of supervised release commenced, as a matter of law, once he completed serving his lawful sentences." *Id.* at 58. The Supreme Court further reasoned that this determination was supported by the "purpose and design" of the supervised release statute. 529 U.S. at 59. This is because "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* Accordingly, "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset

and reduce terms of supervised release." *Id*. Finally, the *Johnson* Court noted that the inequities presented "when an individual is incarcerated beyond the proper expiration of his prison term" could potentially be ameliorated by the statutory structure which allows the sentencing court to modify or reduce an individual's terms and conditions of supervised release "in the interest of justice." *Id*. at 60.

As the decision in *Johnson* clarifies, an individual is not automatically entitled to a reduction of his term of supervised release simply because he has served a longer term of incarceration than he lawfully should have served. Likewise, time spent in prison instead of spent on home confinement cannot be credited to a term of supervised release, because the term of supervised release does not begin until the custodial term has expired. "Though interrelated, the terms are not interchangeable." *Id*. at 58-59. Fortunately, a remedy is still available to an aggrieved individual, who may request a modification or termination of his term of supervised release in the "interest of justice" by filing a motion under 18 U.S.C. § 3583(e) with the sentencing court—in Salyer's case, with the Eastern District of Tennessee. *Johnson,* 529 U.S. at 60.

Because the decision to alter or end Salyer's term of supervised release falls exclusively within the authority of the United States District Court for the Eastern District of Tennessee, this Court lacks subject matter jurisdiction to grant such relief to Salyer. *See. e.g., Eleazar v. Menifee*, No. 05 CIV. 533 GBD, 2006 WL 3634382, at *2 (S.D.N.Y. Dec. 13, 2006) ("[O]nly the court that sentenced petitioner can "modify, reduce, or enlarge the conditions of supervised release."). As a result, the undersigned **FINDS** that the claim raised in Salyer's petition is moot, and the "collateral consequences" exception to mootness does not apply.

**B. Exception to Mootness—Capable of repetition yet evading review**

The second exception to the general mootness doctrine, met when there is a reasonable expectation that the same petitioner will be subjected to the same wrongful action again, is likewise not applicable to this petition. *Leonard,* 804 F.2d at 842. As Salyer has been released from custody, "there is no reasonable expectation that [he] will be incarcerated again and face the same set of circumstances in the future." *Maultsby v. Rickard*, No. 1:17-CV-04612, 2018 WL 4289648, at *2 (S.D.W. Va. June 29, 2018), *report and recommendation adopted*, No. CV 1:17-04612, 2018 WL 4291740 (S.D.W. Va. Sept. 6, 2018). Indeed, it is implausible that Salyer will again be incarcerated and again be subjected to the same purportedly unconstitutional delay in home confinement placement. *See e.g. Incumaa*, 507 F.3d at 289.

In summary, the undersigned **FINDS** that Salyer's habeas petition raises a claim for relief that is now moot, and neither exception to the general mootness doctrine applies to Salyer's petition, or his request for a reduction of supervised release. The only relief that this Court can grant to Salyer, he essentially received with his release from prison. To the extent that Salyer believes the allegedly improper delay in placing him in home confinement should serve as a reason to reduce his term of supervised release, he must pursue that claim as a request for modification under § 3582 in the Sentencing Court.

## IV.    Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's requests for dismissal, (ECF Nos 9, 12); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1); and **REMOVE** this matter from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and to counsel of record.

**FILED:** July 29, 2020

Cheryl A. Eifert
United States Magistrate Judge